# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : Crim. No. 18-251-BAH |
| v. | : |
| | : Sentencing: 8-13-21 |
| **KELVIN OTUNYO** | : |

## MEMORANDUM IN AID OF SENTENCING

Kelvin Otunyo, by his attorney, Christopher M. Davis, hereby submits the following memorandum in aid of sentencing. Pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a) as delineated in *Rita v. United States*, 127 S. Ct. 2456 (2007), *Kimbrough v. United States*, 128 S. Ct. 558 (2007), *Gall v. United States*, 128 Ct. 586 (2007) and *Nelson v. United States*, 555 U.S. 338 (2009), Mr. Otunyo respectfully requests this Court to impose a sentence below the Pre-Sentence Report (hereinafter "PSR") recommended 75 months. Seventy-five months is the low end of Otunyo's PSR calculated guideline range and includes the mandatory minimum of 24 months for the aggravated identify theft conviction. Mr. Otunyo submits that a sentence of 43 months is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553. He arrives at this sentence by way of an adjustment to his guidelines and/or a variance for the reasons discussed below.

## PROCEDURAL HISTORY

1. On March 26, 2019, a federal grand jury in the District of Columbia returned a five-count Superseding Indictment charging Mr. Otunyo with Bank Fraud, in violation of 18 USC § 1344(2) (Counts One and Two); Aggravated Identity Theft, in violation of 18 USC § 1028A(a)(1) (Count Three); and Conspiracy to Launder Monetary Instruments, in violation of 18 USC §§ 1956(a)(1)(B)(i), 1956(h), and 1957 (Counts Four and Five). On April 1, 2021, the defendant, on his own volition, pled guilty to the five-count Superseding Indictment without the benefit of a plea agreement.

## FACTUAL ADDITIONS AND CORRECTIONS

2. Belatedly, Mr. Otunyo requests that the PSR be amended to include as his legal address xxx Laurel, MD xxx. This is the address on his driver's license and the address he uses for all of his mail. Dkt. 94 at 3.

3. Mr. Otunyo also moves to amend paragraph 68 of the PSR, which states "the defendant *personally obtained* at least $303,207.85 in criminal proceeds involved in the money laundering conspiracy." It should state that he *obtained or attempted to obtain.*

## GUIDELINE CALCULATION

4. The PSR calculated Otunyo's guidelines to be a criminal history II, with an adjusted base offense level of 25. This results in a guideline range of 63 to 78

months.  The writer then recommended a *Smith* variance, resulting in the functional equivalent of a base offense level 23, with a guideline range of 51 to 63 months.  The PSR recommends a sentence of 51 months and then adds the mandatory minimum of 24 month for a total sentence of 75 months.  See, Dkt. 95 at 1.

     5.  Mr. Otunyo submits that he should receive an additional point off for *acceptance of responsibility*, an additional point off for *role*, and finally, the equivalent of 2 points off to negate the "*double counting*" for the *sophisticated means* with which he is currently assessed for both the money laundering and bank fraud conspiracies.  This results in a calculation equivalent of a category II criminal history with an adjusted base offense level of 19 (23-4 = 19) for a guideline range of 33 to 41 months, plus 24 months.  Adopting the PSR recommendation for low end of guidelines, his final exposure is 57 months.

## ARGUMENT

     6.  The era of binding guidelines ended fifteen years ago, when the Supreme Court held that "the Federal Sentencing Reform Act of 1984…ma[de] the Guidelines effectively *advisory.*" *United States v. Booker*, 543 U.S. 220, 245 (2005) (emphasis added). Under *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 264 (citing *See* 18 U.S.C. §§ 3553(a)(4), (5)). While

holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the Supreme Court in *Booker* held that courts must consider <u>all</u> the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

7.  Several years after *Booker*, the Supreme Court made clear that the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2).  These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a). After considering all of the factors set forth in § 3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." *See*, 18 U.S.C. § 3553(a)(2)).

**Acceptance of Responsibility**

8. Mr. Otunyo initially agreed to cooperate with the United States. He was thoroughly debriefed and in fact provided information that was used to investigate and charge another person. During the process of cooperating, he further inculpated himself. However, due to what can only be described as a fatal misunderstanding, he did not get credit for the information he provided. Nor has the United States moved for an additional one-point reduction for acceptance of responsibility pursuant to U.S.S.G § 3E1.1 (b).

9. The government's discretion to file a § 3E1.1 motion is broad, but it is not unfettered. A district court may review the government's decision not to file a § 3E1.1 motion and grant a remedy if it finds the refusal was 1) driven by an unconstitutional motive, or 2) not rationally related to a legitimate government end. Here, Otunyo's cooperation efforts were made in the first few months after his arrest. His misunderstanding of the ground rules of cooperation led to the breakdown in communications shortly before the pandemic began. The United States did not have to prepare for trial and Otunyo's plea immediately followed his failed effort to have a *Kastigar* hearing.

10. In *United States v. Villaba*, 86 F.Supp.3d 1252 (D.N.M. 2015) the government was prepared to deny the defendant the final one-point for acceptance of responsibility because the defendant litigated a suppression motion. The

District Court found that the defendant was still entitled to the final one-point reduction and to deny that to him for exercising his constitutional right to contest the search was improper. Citing decisions from the 2nd, 4th, and 9th Circuits, the *Villaba* court found that timing was important, however, the exercise of one's right to litigate what was believed to be a constitutional infirmity should not be held against a defendant.[1]

11. Otunyo debriefed soon after his arrest. He repeatedly asked his former attorneys (three in total) to file a *Kastigar* motion. Then the pandemic hit. Finally, a very short time after litigating his *Kastigar* motion, he pled guilty to the indictment. The defendant never denied his guilt, he simply believed he had been treated unfairly and wanted a court ruling on the matter. The United States did not have to prepare for trial and substantial judicial resources were spared as a consequence.



12. In the event the Court declines to order the government to move for the additional point, Mr. Otunyo would move for a variance, due to the unique and unusual circumstances that are present in his case. 18 U.S.C. §3553(a).

---

[1] "The Second Circuit, stating that the Fourth Circuit's reasoning in *Divens* applies "with equal force" to the defendant's request for an evidentiary hearing on sentencing issues, held that the government may not withhold a § 3E1.1 motion based upon such a request." *United States v. Lee,* 653 F.3d 170, 175 (2d Cir.2011). *United States v. Divens,* 650 F.3d 343 (4th Cir.2011) *(*§ 3E1.1 focuses on conserving trial resources, and not appellate resources.). *United States v. Vance,* 62 F.3d 1152 (9th Cir.1995) (The court erred in holding it against Vance that he moved to suppress evidence before pleading guilty).

**Role Enhancement**

13.  The Sentencing Guidelines permit the district court to adjust one's base offense level because of a defendant's "aggravating role" in an offense. U.S.S.G. § 3B1.1. The magnitude of the enhancement varies with the culpability of the defendant: 4 levels for leading or organizing relatively extensive criminal activity; 3 levels for managing or supervising such activity; and 2 levels for leading, organizing, managing, or supervising relatively confined criminal activity. *See,* U.S.S.G. §3B1.1.   An enhancement under § 3B1.1 must be supported by the preponderance of the evidence, *see United States v. Thomas,* 114 F.3d 228, 261 (D.C.Cir.1997).

14.  Mr. Otunyo received a three-point enhancement for his role in the charged offenses.  As acknowledged by the PSR, one of the people that he was alleged to have managed or supervised was a government informant and therefore not a "participant" by definition.  See, § 3B1.1 app. N. 1.  Other participants involved in the offense each had their own individual functions to perform.  The fact that Otunyo acted as a pass-through for others does not mean he had control over people. To the contrary, people had control over him.  Afolabi controlled whether Otunyo received any proceeds of the fraud, others controlled whether he had access to the "tools" of the scheme.  Others controlled whether he had the tools necessary to execute the scheme.

15. This was not a terribly complex crime, it just had a number of moving parts, most of which required a pass-through, e.g., of documents, checks, and other items pertinent to the scheme. Otunyo was the pass-through. He falls in that gray area, which although central to the crime, does not include the "control over other participants" that §3B1.1 (b) requires. *See*, *U.S. v. Clark*, 747 F.3d 890 (D.C. Cir. 2014) (finding the record supported a two-point role enhancement for a "mastermind" of a fraudulent scheme).

16. Mr. Otunyo exercised no control over any participant. He simply fulfilled his role of a pass-through of the information and items necessary for the overall scheme to succeed. There were many people up the chain from Mr. Otunyo. Everyone involved in this offense would be a supervisor or manager if Otunyo qualified as one. "[W]e do not discern any basis in the guidelines for enhancing the sentence of every participant in a conspiracy who does not reside in its bottom layer. In other words, not all hierarchical distinctions among offenders' matter for sentencing." *United States. v. Grahm*, 162 F.3d 1180,1185 (D.C. Cir. 2015). He should be enhanced two points for being actively involved, but not quite falling within the purview of 3B1.1 (a) or (b). *See*, U.S.S.G. 3B1.1 (c).

## 18 U.S.C. § 3553(a)

**Variance**

17. In 2020, district court judges in the District of Columbia imposed a downward variance in 38.9 % (11.5 + 27.4 = 38.9) of the cases that came before

them. *See*, Ex. 1. Only 35.6 % of the sentences were within guideline range. *See*, *Ex*. 1. Specifically, for fraud and money laundering cases combined, a downward variance was imposed in 33.3 % of the cases, while only 30.8 % of the cases were sentenced within guidelines. *See*, Ex. 2. Noteworthy is the fact that in 23.1 % of these cases, a § 5K1.1 was filed on behalf of the defendant. *See*, Ex. 2.

**Cooperation/Acceptance of Responsibility**

18. The defendant cooperated in his case. He met with the authorities and outlined both his criminal behavior, along with that of others. On information and belief, the cooperation provided assisted in the investigation and arrest of at least one individual. There really was not much more the defendant could have provided to the United States by way of cooperation. The fatal misunderstanding that Otunyo had about the ground rules involved in cooperation led to him being deprived of credit for what he did provide. Mr. Otunyo would move for a variance, due to the unique and unusual circumstances that are present in his case. 18 U.S.C. §3553(a).

**Double Counting**

19. The money laundering conspiracy and the bank fraud conspiracy are hard to separate in Otunyo's case. Clever charging leaves him with two distinct offenses, which in reality are one offense intrinsically intertwined. Granted, the offenses outlined in the bank fraud conspiracy do not appear in the money

laundering conspiracy, but only because of the way the offenses were charged. And, here, Otunyo gets 4 points added to his adjusted base offense level.

20. In calculating Otunyo's PSR adjusted base offense level for the money laundering conspiracy, he has been assessed a two-level enhancement for "sophisticated laundering" under U.S.S.G. § 2S1.1(b)(3) along with a two-level enhancement under U.S.S.G. § 2B1.1(b)(10) for sophisticated means. Although technically two separate offenses, on the facts of this case, the bank fraud could not have occurred without the money laundering – the offenses were so connected, one could not have occurred without the other. A strict reading of the guidelines seems to allow this double counting, but on these facts, it is results in an unwarranted increase in Otunyo's adjusted base offense level.

21. There are several unpublished opinions that arguably condone this practice of double counting. See, *United States v. Ellis*, 817 Fed.Appx. 780, (11th Cir. 2020); *United States v. Kassim*, 598 Fed.Appx. 831 (3rd Cir. 2015). However, both of these nonbinding opinions reference the distinct and separate character of the underlying fraudulent and money laundering criminal activity. Both decisions point to the fact that fraudulent activity occurred outside the United States, while the money laundering activity occurred in the country. *See*, *United States v. Ellis,* 817 Fed.Appx. at 790; *United States v. Kassim,* 598 Fed.Appx. at 832. Mr. Otunyo argues that the unique facts present in his case do not support such a

finding. He argues for a base offense level reduction or variance - a time reduction equivalent to a 2- point reduction in his base offense level.

**Unwarranted Sentence Disparity**

22. In a related case, Michael Orji (18 cr 68 - BAH) ran a similar scheme on a much larger scale. Orji utilized the same methods yet did not get charged with an aggravated felony: an offense that adds 24 months consecutive to any other sentence in Mr. Otunyo's case. Orji had a criminal history category of V, while Otunyo is a category II.[2] Orji's offense involved an intended loss of 5.7 million dollars. Otunyo's offense targeted a fraction of that amount.[3] The United States recommended a sentence of 87 months. Dkt. 28. Orji also received 3-points off for acceptance of responsibility and the plea agreement was silent on a role enhancement. *See*, Dkt. 17. Orji pled guilty 11 months after he was arrested, compared to Otunyo's immediate efforts to cooperate after his arrest.

23. Kelvin Otunyo was operating on a much smaller scale than Orji. However, the United States did not seek the same enhancements in Orji's case, nor did it require Orji to plead guilty to aggravated identity theft. Ultimately, Orji received a variance amounting to a 42.8 % reduction of the low end adjusted base

---

[2] *See*, Dkt. entry made on 1/28/19 at 5(c).
[3] Mr. Otunyo's calculated intended loss was $303,207.00. This is approximately 5% of Orji's intended loss.

offense level found by the probation department.[4]  A similar variance in Mr. Otunyo's case would be a 42.8 % reduction from 75 months, which is 42.9 months.[5]  Mr. Otunyo requests a variance to 43 months, to account for the disparate treatment of the two cases.

**History and Characteristics of Defendant**

24.  Kelvin Otunyo is a soft spoken, kind, and intelligent man.  Even when frustrated with his current legal predicament, he remains respectful of those around him.  He has shown the respect this Court deserves throughout his lengthy journey through the legal system.  His criminal history is minor.  He is the product of trauma, having lost his father to a fatal home invasion as a child.

25.  Defendant faces the prospect of being forcibly returned to a country where none of his immediate family reside.  His brother and mother live in London, others live in the United States.  He has the full support of his family, who is so concerned about him that they hired, independent of the court system, a former U.S. Probation Officer (District of Maryland) to do a full-scale mitigation investigation.  This report is attached as Ex. 3.  Although a prison sentence will certainly be punitive, a bar to remaining in this country is extraordinarily punitive,

---

[4] The probation department calculated a low-end guideline of 210 months for Mr. Orji. *See*, Dkt. entry dated 6/20/19.  The calculation is as follows:  210 – 120 (actual sentence – Dkt. 42) = 90/210 = 42.8%

[5] A 42.8 % reduction of 75 months calculates out as follows: .428 x 75 = 32.1 months.  This calculates out to be 75 – 32.1 = 42.9 months.

yet it is certainly on the horizon. In the abstract, this in and of itself, eliminates the need to protect the community from further criminal conduct.

**Restitution**

26. The United States and the defense agree to the following restitution figures:

      **$50,353.42**  Peachtree Residential, LLC.
      **$6,054.57**  First United Bank of Pennsylvania
      <u>**$67,750.00**</u>  Shore United Bank
      **$124,157.99**  Total

**Smith Departure**

As a deportable alien, Mr. Otunyo is not eligible for "the benefits of 18 U.S.C. § 3624(c), which directs the Bureau of Prisons, to the extent practicable, to assure that prisoners spend part of ... their sentences ... under conditions — possibly including home confinement — that will 'afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community.'" *United States v. Smith*, 27 F.3d 649, 651 (D.C. Cir. 1994). To account for the disparate treatment of non-citizens versus U.S. citizens, he requests a downward variance equivalent to at least a 2-point reduction in his guideline range, as recommended in the PSR. Dkt. 95 at 1.

**CONCLUSION**

In light of all of the reasons stated above, and for any other reason that may be discussed at the hearing on this matter, Mr. Otunyo respectfully requests that he be sentenced to a term of 43 months, a term of imprisonment that is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553(a).

                                                Respectfully submitted,

                                                _____/s/_____
                                                Christopher M. Davis # 385582

                                                Davis & Davis
                                                3133 Connecticut Avenue, NW Ste 202
                                                Washington, DC 20036
                                                (202) 234-7300


## CERIFICATE OF SERVICE

I Hereby Certify that a copy of this motion was served upon all counsel of record via the Court's CM/ECF System on this 29th of August 2021.

                                                _____/s/_____
                                                Christopher M. Davis